THE PEOPLE *ex rel.* Louis F. POST *et al.* Appellants, *vs.* JOHN J. HEALY, State's Attorney, Appellee.

*Opinion filed December 17, 1907—Rehearing denied Feb. 6, 1908.*

1. QUO WARRANTO—*State's attorney's discretion is final where petition involves no private rights.* As respects the filing of a petition for leave to file an information in the nature of *quo warranto,* which is, in fact, a prosecution by the People, involving no private or individual rights of the relators, the State's attorney has the same discretion originally exercised by him at common law, when *quo warranto* was solely a prerogative remedy of the crown, and such discretion is not subject to review.

2. SAME—*State's attorney's discretion is limited where private rights of relators are involved.* Under our statute relating to *quo warranto,* if an individual having a private and personal grievance for which an information in the nature of *quo warranto* is the only remedy, shall present a proper petition, with evidence of facts which establish his right, it is the duty of the State's attorney to apply for leave to file the information, and if he refuses he may be compelled by *mandamus* to perform that duty. (*People* v. *Healy,* 230 Ill. 280, followed.)

3. MUNICIPAL CORPORATIONS—*power to remove officers having fixed term is not incident to power of appointment.* If an officer of a city undertakes to exercise a power he must be able to show that such power has been conferred by legislative grant; and the power to remove an officer whose term of office is fixed for a definite period by statute is not incident to the power of appointment.

4. SAME—*the School act of 1872 repealed provision of Chicago special charter relating to removal of members of board of education.* The provision of the special charter of the city of Chicago which authorized the removal of members of the board of education by the common council, which was also authorized to elect the members of such board, was repealed by the act of 1872, relating to free schools, and providing a different method of appointment.

5. SAME—*power of removal under City and Village act is confined to appointments under such act.* The general provision of the City and Village act of 1872, (Rev. Stat. 1874, chap. 24, art. 2, sec. 7,) relating to the power of the mayor to remove officers appointed by him, has reference to appointments made under the said act, and does not extend to officers appointed under other distinct acts for fixed terms.

6. SAME—*mayor of Chicago has no power to remove members of board of education.* In cities having more than 100,000 inhabit-

ants the mayor has no power to remove members of the board of education from office, since such power is not given by the School law nor by the City and Village act; nor can it be implied from a consideration of the two acts, nor from the fact that the board of education is, in a limited sense, a part of the municipal government of the city. (*Brenan* v. *People,* 176 Ill. 620, explained.)

. APPEAL from the Superior- Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

EUGENE H. GARNETT, (GWYNN GARNETT, of counsel,) for appellants:

Section 1 of the Quo Warranto act does not purport to vest in the State's attorney the power to refuse to institute *quo warranto* proceedings to oust usurpers of offices when he is requested so to do by parties whose offices are filled by the usurpers, and when he refuses to act in a proper case he may be compelled by *mandamus.* Statute of 9 Ann, chap. 20, sec. 4; *Rex* v. *Trelawney,* 3 Bur. 1616; *Rex* v. *Wardroper,* 4 id. 1964; *People* v. *Ridgley,* 21 Ill. 66; *People* v. *Waite,* 70 id. 26.

The word "may" in the Quo Warranto act should be construed to mean "shall." *Schuyler County* v. *Mercer County,* 4 Gilm. 23; *Gillinwater* v. *Railroad Co.* 13 Ill. 4; *James* v. *Dexter,* 112 id. 491; *Brokaw* v. *Highway Comrs.* 130 id. 490.

When a State's attorney abuses the discretion vested in him or refuses to perform a duty that is purely ministerial his action should be controlled by *mandamus. Dental Examiners* v. *People,* 123 Ill. 241; *People* v. *Cook County,* 176 id. 581; *People* v. *Highway Comrs.* 158 id. 208; *Glencoe* v. *People,* 78 id. 382; *Hawes* v. *People,* 129 id. 123; *People* v. *Chytraus,* 228 id. 194.

In the absence of a constitutional or legislative provision the power of removal from office is not incident to the power of appointment, where the statute creating the office specifically fixes the length of the term. *People* v. *Higgins,* 15 Ill. 113; *People* v. *Ridgley,* 21 id. 68; *Field* v. *People,* 2

Scam. 79; *Ex parte Hennen,* 13 Pet. 230; *United States* v. *Avery,* Deady, (U. S.) 204.

Section 7 of article 2 of the City and Village act confers no power on the mayor of the city of Chicago to remove members of the board of education. The manifest intention of the legislature controls the letter of the act. *People* v. *Chicago,* 152 Ill. 552; *Reinecke* v. *People,* 15 Ill. App. 241; *Cruse* v. *Aden,* 127 Ill. 239; *Hogan* v. *Akin,* 181 id. 448.

The grant to the mayor of power, under the School act, to appoint members of the board of education, unaccompanied by a grant of power to remove, implies the exclusion of such power. *Cairo* v. *Bross,* 101 Ill. 478; *Kiel* v. *Chicago,* 176 id. 140; *Peers* v. *Board of Education,* 72 id. 509.

When the mayor appoints members of the board of education under the School act he is acting as a school officer, and not in his official capacity as mayor of the city of Chicago. *Speight* v. *People,* 87 Ill. 600; *Fuller* v. *Heath,* 89 id. 313.

The whole subject matter of the City and Village act is foreign to school affairs. *Smith* v. *People,* 154 Ill. 69; *Brenan* v. *People,* 176 id. 626.

The board of education of the city of Chicago is to a certain extent an agency of the State. *Kinnare* v. *Chicago,* 171 Ill. 334; *Adams* v. *Brenan,* 177 id. 198.

GEORGE W. MILLER, and HOWARD W. HAYES, (EDWARD J. BRUNDAGE, Corporation Counsel, of counsel,) for appellee:

At common law and under the Quo Warranto act of this State the Attorney General and State's attorney are vested with discretionary power, the exercise of which the courts will not control. Sutherland on Stat. Const. 290; *Smith* v. *Laatsch,* 114 Ill. 271; *Mackin* v. *Harris,* 187 id. 480; *Florida* v. *Gleason,* 12 Fla. 213; Cole on Crim. Informations, 126, 127; *Hesing* v. *Attorney General,* 104 Ill. 292; *Donahue* v. *County of Will,* 100 id. 108; *Porter* v. *People,* 182

id. 516; *People* v. *Attorney General,* 22 Barb. 117; *People* v. *Demarst,* 67 N. Y. 335; *Barnum* v. *Gilman,* 27 Minn. 466; *Carnes* v. *Brown,* 111 Mich. 660.

A writ of *mandamus* does not lie to direct the discretion of a public officer. *Railroad Co.* v. *Wilson,* 17 Ill. 128; *People* v. *McCormick,* 106 id. 188; *People* v. *Reddick,* 131 id. 334; *People* v. *Highway Comrs.* 118 id. 239; *People* v. *Anthony,* 129 id. 218; *VanDorn* v. *Anderson,* 219 id. 218.

The mayor of Chicago has power to remove members of the board of education. The board of education of the city of Chicago is a department of the municipal government. Hurd's Stat. 1905, chap. 24, art. 1, sec. 6; *Smith* v. *People,* 154 Ill. 58; *Brenan* v. *People,* 176 id. 620; *Railway Co.* v. *Randle,* 183 id. 364; *Trustees* v. *School Inspectors,* 214 id. 30; *People* v. *Chicago,* 227 id. 445; *People* v. *Roche,* 124 id. 9; *People* v. *Mottinger,* 215 id. 256.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The superior court of Cook county sustained the demurrer of the appellee, John J. Healy, State's attorney of said county, to the petition of the People of the State of Illinois, on the relation of Louis F. Post, Raymond Robins, Wiley W. Mills, Cornelia DeBey and John J. Sonsteby, praying for a writ of *mandamus* directed to the said appellee, commanding him to file in a court of competent jurisdiction a petition for leave to file an information in the nature of a *quo warranto,* on behalf of the said People and on the relation of said persons, against Alexander Blackwood, George Limbert, Frank C. Waller, George T. Trumbull and Alfred D. Kohn, calling upon them to show by what authority they severally hold, execute and usurp the office of members of the board of education of the city of Chicago. The relators elected to stand by their petition and it was dismissed at their cost, and an appeal to this court was prayed, allowed and perfected.

The material averments of the petition which were admitted by the demurrer to be true were, in substance, that the city of Chicago had a population of more than 100,000 inhabitants; that on May 27, 1907, the board of education consisted of the relators and other named persons; that relators were members of said board by appointment of Edward F. Dunne, a former mayor of said city; that on May 20, 1907, long before the expiration of their respective terms of office, Fred A. Busse, mayor of said city, wrote to each of them a letter stating that he had removed them severally from their offices as members of the board; that none of them had ever resigned or become incapacitated and no charge had been made against either of them; that on the same day the mayor, with the consent of the city council, made a purported appointment of said Blackwood, Limbert, Waller, Trumbull and Kohn to succeed the relators, severally, as members of said board, and said persons so named by said mayor entered upon the execution of the duties, privileges and functions of members of the board, by reason of which the relators were prevented from performing their duties as members of the board; that on July 2, 1907, the relators presented to appellee affidavits of all said matters and a draft of a petition for leave to file an information in the nature of a *quo warranto* against said persons so named by said mayor; that relators also presented to appellee a sufficient bond for the payment of all court costs, and also security for costs; that relators then asked appellee to sign and file the petition in the circuit court or superior court of Cook county or this court; that appellee had no objection to the form of the petition nor to the bond or security, and said he would file the petition if he became convinced that the mayor was without authority to remove members of the board of education; that appellee afterward concluded that the mayor did have such power and on that ground alone refused to file the petition, and that the relators then presented to the Attorney General the same affi-

davits, draft of petition, bond and security, and the Attorney General refused to act because appellee had already refused.

Two questions are involved in this case, both of which must be decided in order to determine whether the superior court erred in sustaining the demurrer and dismissing the petition. The first question is, whether the appellee, as State's attorney, is possessed of an arbitrary and uncontrolled discretion to file or refuse to file a petition for leave to file an information in the nature of a *quo warranto* upon the application of an individual having a personal right enforcible by that proceeding; and the second is, whether the mayor of the city of Chicago has power to remove from office members of the board of education. If a State's attorney has such discretion he cannot be coerced by the writ of *mandamus,* and if the mayor has such power the writ in this case would not be awarded, for the reason that the object sought would be unattainable and the writ useless.

The first question was answered in the case of *People ex rel.* v. *Healy,* 230 Ill. 280. In the consideration and decision of that case we had the valuable aid of the exhaustive briefs and arguments of the counsel in this case, both printed and oral. We gave full consideration, at that time, to every authority and argument presented in this case, and we cannot add anything to that decision by a re-statement here of the reasons on which it was based. It was there held that in all cases which are, in fact, prosecutions on the part of the people, involving no personal or individual right, the State's attorney is vested with the same discretion originally exercised by him at the common law, when an information in the nature of a *quo warranto* was solely a prerogative remedy of the crown; but under our statute, which has enlarged the scope of the remedy for the protection of individual rights, if an individual having a private and personal grievance for which the proceeding is the only remedy shall present a proper petition to the State's attorney, with evidence of the facts necessary to establish

his right, it is the duty of such State's attorney to apply for leave to file an information, and if he refuses he may be compelled by *mandamus* to perform that duty.

The second question has been exhaustively argued by counsel·on both sides and must necessarily be decided for the reasons above stated. If, as a matter of law, the decision of the appellee that the mayor has power to remove members of the board of education was correct, the petition did not state any fact which would require appellee to take action, and if that is the law the court did not err in dismissing the petition. In considering the question it is to be borne in mind that if an officer of a city undertakes to exercise a power he must be able to show that the power has been conferred by legislative grant, and the power to remove an officer whose term of office is fixed for a definite period by statute is not incidental to the power of appointment. There are several statutes necessary to be considered in determining the question whether the power claimed has been conferred upon the mayor.

By the charter of the city of Chicago of the year 1863 the officers of the city included a board of education, which consisted of fifteen school inspectors elected by the common council and divided into three classes of five members. At the first appointment the first class held for one year, the second for two years and the third for three years, and as the terms expired the common council annually elected five inspectors, who held their office for three years. The common council was given power to manage the school funds, school houses and school matters generally, and the board of education only had control subject to the regulations prescribed by the common council. There was a general provision authorizing the common council, by a vote of two-thirds of all the aldermen authorized to be elected, to remove persons appointed to office by the common council or the mayor, with the advice and consent of the common council, but no officer could be removed except for cause

and after a hearing. In 1865 the city charter was amended so as to provide that the board should consist of sixteen school inspectors, one to be selected from each ward and to be elected by the common council. They were to be divided into four classes, vacating their seats one class each year, so as to hold office four years.

In 1872 the legislature passed two acts having relation to the subject of this suit, both of which went into effect on July 1, 1872. One act was entitled "An act to establish and maintain a system of free schools," and it was approved April 1, 1872. (Laws of 1871-72, p. 700.) The act was a comprehensive one, covering the entire subject of the duty imposed upon the legislature to provide a system of free schools for the State. It provided that the board of education in cities having a population exceeding 100,000 inhabitants should consist of fifteen members, to be appointed by the mayor by and with the consent of the common council, five of whom were to be appointed for one year, five for two years and five for three years, and at the expiration of the term of any member a successor was to be appointed in like manner. It gave no authority to remove members of the board. The other act was approved April 10, 1872, and provided a general scheme for the incorporation of cities and villages throughout the State, and the city of Chicago adopted that act. The constitution had forbidden the amendment of special charters, and this act was passed providing a uniform system of incorporation applicable to all cities and villages. It was entitled "An act to provide for the incorporation of cities and villages." (Laws of 1871-72, p. 218.) It contained no provision whatever relating to schools or school officers, the whole subject matter of which was covered by the other act to establish and maintain a system of free schools. The Cities and Villages act dealt alone with the subject of local municipal government and provided for a mayor and other officers, who should perform the functions of municipal officers. It pro-

vided that the city council might, by ordinance, provide for the election by the legal voters of the city, or the appointment by the mayor, with the approval of the city council, of certain officers named in the act and such other officers as might by said council be deemed necessary or expedient. There was a further provision that all officers of any city, except where therein otherwise provided, should be appointed by the mayor, by and with the consent of the city council. Article 2 was entitled "Of the mayor," and prescribed his powers and duties as the chief executive officer of the city. Section 7 of that article was as follows: "The mayor shall have power to remove any officer appointed by him on any formal charge, whenever he shall be of the opinion that the interests of the city demand such removal; but he shall report the reasons for such removal to the council at its next regular meeting." The section was amended in 1879 (Laws of 1879, p. 66,) so as to provide for a restoration to office if the city council should disapprove of the removal.

The power of appointment contained in the Cities and Villages act does not include members of the board of education, and although the general language would include every officer appointed by any mayor under any other act, the question is whether the intention was to include school officers appointed under another and distinct act for fixed terms, and having duties entirely foreign to municipal government or the subject matter of the act in question. It is true that members of the board of education are officers, and it is also true that in the city of Chicago they are appointed by the mayor, by and with the consent of the city council. What the intention was must be determined from the rules of statutory construction and the aids to be found in other acts of the legislature.

The School law of 1872, with subsequent amendments, remained in force until 1889, when an act was passed which repealed the act of 1872 and other acts, and which consti-

tuted a complete code and revision of the entire subject of free schools. It was entitled "An act to establish and maintain a system of free schools." (Laws of 1889, p. 258.) That is the act now in force, and section 7 of article 6 provides, that in cities having a population exceeding 100,000 inhabitants the board of education shall consist of twenty-one members, to be appointed by the mayor, by and with the consent of the common council, seven of whom shall be appointed for the term of one year, seven for the term of two years and seven for the term of three years. At the expiration of the terms of members their successors are to be appointed in like manner and to hold office for the term of three years. Any vacancy occurring is to be filled by appointment of the mayor, by and with the approval of the common council, for the unexpired term. Like the act of 1872, this act, which purports to cover the whole subject and provides for the appointment of members of the board, contains no power of removal. If the power exists at all it is by virtue of the general provision in the Cities and Villages act, which has no relation to the school system and deals only with the different and distinct subject of municipal government.

There is not a word concerning schools in the Cities and Villages act and not a provision relating to municipal government in the School act. The chief reliance of counsel for appellee to bring the two into conjunction is the case of *Brenan* v. *People*, 176 Ill. 620. That case arose under the Civil Service act, and it was there held that the status of the board of education as a department of the municipal government under the special charter had not been so changed as to exclude it from the operation of the Civil Service act, but that the board is still connected with, dependent upon and to some extent a part of the municipal government of the city. By section 11 of that act members of the board of education were exempt from the classified service, and their exemption indicated an intention to in-

clude the rest, and it was held that the offices and places of
employment under the board fall within the operation of
the Civil Service act. Nothing that was said in that case
is in any way conclusive of the question involved here, but
we derive a substantial aid from that act in determining the
intention of the legislature as to the power of removal by
the mayor of officers other than those appointed under the
Civil Service act. That act was passed in 1895, (Laws of
1895, p. 85,) and section 1 provides for the appointment
of civil service commissioners by the mayor. Section 2
provides that the mayor may, in his discretion, remove any
commissioner for incompetence, neglect of duty or malfeas-
ance in office, and he is required to report, in writing, any
such removal to the city council, with his reasons therefor.
If the legislature had intended to confer upon the mayor
of a city, by virtue of the Cities and Villages act, power to
remove officers appointed under other acts, the special pro-
vision for removal would be useless and presumably would
not have been made. The Civil Service act by its terms
brought the employees of the board of education within its
provisions, and in some sense the board is connected with
and dependent upon the city government. The legislature,
in providing the scheme of free schools for the State at
large, saw fit to accomplish their purpose in certain cities
by employing the powers and agencies of the city govern-
ment, but in another sense a board of education is a State
agency and connected with and a part of the free school
system of the State.

Another act which was passed at the same session of
the legislature, in 1872, indicates the legislative intent as to
what officers could be removed under the Cities and Vil-
lages act. That was an act authorizing cities to maintain
free public libraries. (Laws of 1871-72, p. 609.) It pro-
vided for the appointment by the mayor of a board of di-
rectors, by and with the approval of the city council, and
authorized the mayor, with the consent of the city council,

to remove any director for incompetence or neglect of duty. The board of directors were officers appointed by the mayor, and yet this act made special provision for their removal.

It is clear that the provision of the special charter of 1863 for the removal of members of the board of education by the common council, which was also authorized to elect such members, was repealed by the act of 1872 providing for a scheme of free schools and a different method of appointment. In addition to all these reasons, the natural construction of the Cities and Villages act would confine the power of removal to officers appointed under that act, since the power is not, in terms, extended to officers appointed under other acts.

Our conclusion is that the mayor of the city of Chicago has no power to remove from office members of the board of education, and therefore the petition presented to appellee stated a good and sufficient ground for filing a petition for leave to file an information in the nature of a *quo warranto* against the persons named in such petition. It is not denied that the matter was one in which the relators had a direct individual interest, and it follows that the court erred in sustaining the demurrer and dismissing the petition.

The judgment of the superior court is reversed and the cause is remanded to that court, with directions to overrule the demurrer, and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded, with directions.*