## The People of the State of Illinois ex rel. Edward H. Frank et al., Plaintiff in Error, v. Joseph P. Streuber, State's Attorney, Defendant in Error.

1. QUO WARRANTO—*sufficiency of interest of petitioner to require State's Attorney to act.* A public officer who has been elected to fill an office of which the statutory term is for two years, and until his successor is elected and qualified, has such an interest in the matter as to require the State's Attorney, upon the filing of a petition showing his election to that office and that by reason of gross irregularities the office is held after the expiration of relator's two-year period, by one illegally elected thereto, to file a petition for quo warranto against the usurper to test the validity of the election.

2. QUO WARRANTO—*sufficiency of showing of right to test validity of election.* A mandatory duty upon the State's Attorney to sign and file a petition for quo warranto to test the validity of a city election is shown by a petition for mandamus which alleges that relator was an officer of such city whose statutory term was for two years and until his successor was elected and qualified, that one of the persons complained of, as city clerk, had by certain specified gross irregularities and violations of the election laws prevented relators and all others except certain persons complained of from being candidates at a city election and had prevented the voters from voting for any but such persons complained of and that they claim and hold the offices through such illegal election, and that relators would have been and had a legal right to be candidates at such city election except for the practices complained of.

Error by relator to the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1922. Reversed and remanded with directions. Opinion filed November 16, 1922.

TERRY, GUELTIG & POWELL, for plaintiff in error.

J. F. EECK, WILLIAM M. P. SMITH and JOSEPH P. STREUBER, for defendant in error.

MR. JUSTICE BARRY delivered the opinion of the court.

Relators filed a petition for mandamus to compel the State's Attorney of Madison county to sign and file a petition for quo warranto against Frank L. Nash et al., to test their right to hold city offices in the City of Edwardsville. The petition was filed at the May term, 1921, of the circuit court. On July 2, 1921, a demurrer was interposed but the same was not argued until December 22, 1921. On December 30, 1921, the court sustained the demurrer and dismissed the petition. The case was brought to the March term, 1922, of this court by writ of error, but defendant was not brought into court until the present term.

The petition shows that Henry P. Hotz, one of the relators, was the mayor of the City of Edwardsville at and prior to the city election held in April, 1921, and that Frank L. Nash was city clerk; that it was the duty of said clerk to prepare and post notice of a primary election to be held on the second Tuesday of March, 1921, for the nomination of city officers to be voted for on the third Tuesday of April, which he failed to perform; that in January, 1921, he announced that no primary would be called or held.

The petition shows that at the general election for city officers next preceding the primary to be held in March, 1921, and for a number of years prior thereto, two political parties had existed in said city known as the Citizens' party and the Independent party, and that each of said parties had nominated candidates for city offices of said city and had cast more than two per cent of the entire vote cast in said city. That after the said city clerk announced that no primary election would be held in March, 1921, petitions for the nomination of said Henry P. Hotz for mayor and

others of the relators for other city offices as candidates of the Citizens' party were filed with the said city clerk. That petitions for the nomination of the said Frank L. Nash for mayor and others for other city offices as candidates of the Independent party were also filed with the said Nash as city clerk.

The petition shows that on the last day for the filing of petitions for nomination of candidates the said alleged candidates of the Independent party filed written requests with the said city clerk that their names be not printed on the official ballot and withdrew as candidates of the said party; that on said day the same persons filed petitions for their nomination as nonpartisan candidates; that on the following day the said city clerk announced that he would hold that all petitions for the nomination of candidates of both the Citizens' and Independent parties were illegal and void and that the official ballot would not contain the names of any of such candidates, and that no names would appear on said ballot except those of the nonpartisan candidates.

The petition shows that thereupon the Citizens' party called ward caucuses which were held and at which ward committeemen were elected who constituted the City Central Committee of said party; that said committee held a meeting and nominated candidates of said party for city offices, the same being the same persons named in the petitions for nomination theretofore filed; that a certificate of nomination was filed with the said city clerk who refused to recognize the same and refused to place the names of said candidates on the official ballot.

The petition shows that the official ballot did not contain the names of the Citizens' or the Independent parties and no blank spaces thereon for either of said parties; that no names were on the said ballot other than those of the nonpartisan candidates; that the said ballot was so small that there was insufficient space thereon for a voter to write the name of an-

other person upon the said ballot by reason of which many persons were unable to cast a vote in said election in accordance with his rights and desires; that the nonpartisan candidates received the highest number of votes but that said election was illegal and that they were not legally elected to said offices.

The special grounds of demurrer were:

1. The petition does not allege facts showing that relators have individual and private rights involved in this case.

2. The petition shows that no individual and personal right of any relator is involved in this case and therefore the defendant is clothed with discretion to sign and file or refuse to sign and file the petition for leave to file an information in the nature of a quo warranto.

It has been held, under our statute relating to quo warranto, that if an individual having a private and personal grievance for which an information in the nature of quo warranto is the only remedy, shall present a proper petition, with evidence of facts which establish his right, it is the duty of the State's Attorney to apply for leave to file the information, and if he refuses he may be compelled by mandamus to perform that duty. *People v. Healy,* 230 Ill. 280; *People v. Healy,* 231 Ill. 629.

In the first of these cases the relator was secretary of the Illinois Publishing Company and a member of the board of directors. It was held that he had such an interest as made it mandatory on the State's Attorney to file a petition for leave to file an information to test the legality of the election of Horace L. Brand as treasurer of the company. In the second case members of the board of education who had been removed from office by the mayor were held to have such an interest as entitled them to require the State's Attorney to file a petition for leave to file an information.

Henry P. Hotz, one of the relators, was elected mayor of Edwardsville in April, 1919. The statute fixed his term of office at two years *and until his successor is elected and qualified.* J. & A. Ill. St. ¶ 1285 [Cahill's Ill. St. ch. 24, ¶ 15]. The period between the expiration of the two years and the election and qualification of his successor is as much a part of his term of office as the fixed statutory period of two years, as will be seen from the many cases cited in 22 R. C. L. 555.

It necessarily follows that if no one has been legally elected to succeed him, he is still entitled to the office. If he has been deprived of the office as the result of an illegal election he certainly has as much right to have the legality of that election tested in court as the members of the board of education had who were illegally removed by the mayor in *People v. Healy,* 231 Ill. 629.

The incumbent of an office, the term of which is for a certain time and until his successor is elected and qualified, is entitled to retain the office after the lapse of his specified term, in the event his successor is ineligible, hence, he has such an interest that he may invoke a decision as to the legality of the election. *State v. Sullivan,* 45 Minn. 309, 11 L. R. A. 272, 47 N. W. 802.

In *Batterton v. Fuller,* 6 S. D. 257, 60 N. W. 1071, it was held that the former incumbent of an office had such an interest as entitled him to contest the election of his successor. In our opinion, Henry P. Hotz, one of the relators, has such an interest as entitles him to demand that the State's Attorney file the petition for leave to file an information and the demurrer should have been overruled.

It is true that a State's Attorney may arbitrarily refuse to file a petition where public interests alone are concerned, yet the constitution demands that all elections shall be free and equal (art. 2, sec. 18), and

where gross irregularities are charged with reference to an election, a proper sense of his official duty should prompt him to act reasonably if not liberally in bringing about an investigation in the courts. We know of nothing more detrimental to good government than the exercise of arbitrary power and authority to prevent investigation where high-handed political methods and grossly irregular practices are charged to have been resorted to.

A State's Attorney should never hesitate to exercise his discretion in favor of the enforcement of law and order, especially with reference to election laws. It is not strange that city government has fallen into disrepute in this country when such practices as are admitted by the demurrer to have occurred in this case are considered by the proper officer to be insufficient to merit a judicial investigation.

In *People v. Altenberg,* 179 Ill. App. 416, 260 Ill. 191, two ballots had been improperly thrown out by the election judges in an election for alderman and the State's Attorney deemed it his duty to test the matter in the courts. All elections should be free and equal and any attempt to avoid such a result would be condemned instead of being condoned.

It is the duty of a city clerk to call a primary election for the nomination of candidates to be voted for at the election in question and to post notices thereof. J. & A. Ill. St. ¶ 5090 [Cahill's Ill. St. ch. 46 ¶ 392]; and for a failure to do so was subject to a fine of not less than $25 nor more than $100, or imprisoned in the county jail not exceeding one year, or both, at the discretion of the court. J. & A. Ill. St. ¶ 5156 [Cahill's Ill. St. ch. 46, ¶ 458]. It is alleged in the petition that instead of performing his duty under the law the city clerk announced in January, 1921, that no primary election would be called or held, and that the clerk gave out blank petitions for the nomination of candidates, and that they were afterwards signed by the requisite number of voters and sworn to and filed with

him; said petitions purported to nominate candidates of the Citizens' and Independent parties. Under the primary law candidates of those parties could only be nominated at a primary election. J. & A. Ill. St. ¶ 5079 [Cahill's Ill. St. ch. 46, ¶ 381].

It is further alleged in said petition that after the nominating petitions were filed with the city clerk, he waited until the last day for filing petitions and then he and his friends withdrew as candidates of the Independent party and filed petitions for their nomination as nonpartisans, and that the next day, after it was too late for others to file petitions, he announced that he would not recognize the original petitions because they were illegal and void.

Said petition further alleges that members of the Citizens' party then attempted to fill alleged vacancies on their ticket and filed a certificate of nomination with the city clerk which he refused to recognize and refused to place any names on the official ballot other than his own name and the names of his friends as nonpartisan candidates; that he left no blank column on the official ballot for the Citizens' or the Independent parties and made the ballot so small and the names so close thereon that voters could not write in the names of others for whom they might wish to vote.

The statute provides that certificates of nomination and nomination papers being filed with the city clerk, and being in apparent conformity with the provisions of the act, shall be deemed to be valid unless objection thereto is duly made in writing. When such objections are made, they are to be considered and passed upon by the mayor, city clerk and one alderman and the decision of any two of them shall be final. J. & A. Ill. St. ¶ 4902 [Cahill's Ill. St. ch. 46, ¶ 212].

It is further alleged that no written objections were filed to the certificates of nomination filed by the Citizens' party, nor to the petitions for nomination filed for the same candidates. It may be suggested that

they were not according to the averments of said petition in apparent conformity with the provisions of the statute. That suggestion is fully answered in *Schuler v. Hogan,* 168 Ill. 369.

In that case a certificate of nomination was filed in behalf of a party that was not a political party within the meaning of the ballot law and was not authorized to make a nomination of candidates in the manner attempted. The county clerk placed the names of such candidates upon the official ballot and it was contended that this rendered the ballot unofficial. The court held that even though the party was not entitled to make the nominations as it did, yet inasmuch as no written objections were filed as provided by the statute, the nomination papers were deemed to be valid and the clerk had the right to place the nominees' names upon the official ballot. Under that case and J. & A. Ill. St. ¶ 4906 [Cahill's Ill. St. ch. 46, ¶ 216], the names of the candidates of the Citizens' party should have been placed upon the official ballot.

It is the duty of a city clerk to prepare the official ballot and to have the same printed and distributed. J. & A. Ill. St. ¶¶ 4906-4907 [Cahill's Ill. St. ch. 46, ¶¶ 216-218]; and for a wilful neglect to perform his duty, or to wilfully perform it in such a way as to hinder the object of the act, he shall be punished by a fine of not less than $5 nor more than $1,000, or by imprisonment in the penitentiary for not less than one year and not more than five years, or by both fine and imprisonment. J. & A. Ill. St. ¶ 4924 [Cahill's Ill. St. ch. 46, ¶ 235].

It may be that if a political party makes no nomination for any office it is not necessary for the clerk to place a blank column upon the official ballot under the appellation of that party, but, in any event, the statute prescribes the form of the official ballot. J. & A. Ill. St. ¶ 4906 [Cahill's Ill. St. ch. 46, ¶ 216]; and it indicates that enough space should be left to enable voters to write in the names of persons whose names

are not printed thereon. It also expressly provides that a voter may vote for some one whose name is not printed "by writing in the name of the candidate of his choice in a *blank space* on said ticket, marking a cross (X) opposite thereto," thus clearly showing that it was intended that the official ballot should contain blank spaces for that purpose. J. & A. Ill. St. ¶ 4915 [Cahill's Ill. St. ch. 46, ¶ 226]; *Sanner v. Patton,* 155 Ill. 553.

The statute as to the form of the official ballot provides in part, that "on the back or outside of the ballot, so as to appear when folded, shall be printed the words 'Official Ballot,' followed by the designation of the polling place for which the ballot is prepared, the date of the election and a *facsimile* of the signature of the clerk or other officer who has caused the ballots to be printed." J. & A. Ill. St. ¶ 4906 [Cahill's Ill. St. ch. 46, ¶ 216]. That provision was held mandatory and a failure to observe it was held sufficient to invalidate an election although the point was not raised until after the election had been held. *People v. Snedeker,* 282 Ill. 425.

If that part of the section is mandatory and the failure to observe it is sufficient to avoid an election, we fail to see any good reason why a failure to so prepare the ballot as to leave sufficient space to write in the name of some candidate whose name is not printed on the ballot would not have the same effect.

We fully realize that by reason of the great delay which has occurred, the question involved may become a moot or abstract question before the case is reached for trial. *People v. City of Streator,* 258 Ill. 273, yet that fact does not relieve us of our duty to pass upon the questions presented on the record.

The judgment is reversed and the cause remanded with directions to overrule the demurrer to the petition.

*Reversed and remanded with directions.*