LEONARD A. MEYER, Mayor of the City of Palos Hills, Plaintiff-Appellant, *v.* DANIEL HURLEY, Defendant-Appellee.

First District (4th Division)    No. 78-18

Opinion filed December 14, 1978.

Nolan, O'Malley and Dunne, of Chicago (Robert J. Nolan and Robert Emmett Nolan, of counsel), for appellant.

Walsh & Neville, Ltd., of Chicago (Matthew P. Walsh and Ronald F. Neville, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The appellant, mayor of Palos Hills, appeals from a determination that the defendant, the police chief of Palos Hills, did not resign his position. We agree with the determination of the trial court (1) that the written letter of resignation was signed before the defendant's appointment and therefore was invalid and (2) that there was no oral resignation.

On December 7, 1977, Leonard A. Meyer, mayor of the city of Palos Hills, filed suit against Daniel Hurley alleging that:

(1) Hurley is a police officer of Palos Hills who until December 6, 1977, was the appointed police chief by virtue of his appointment by the mayor with the approval of the city council;

(2) Hurley on November 26, 1977, verbally informed plaintiff he resigned as police chief, the plaintiff to determine the effective date. A signed but undated written resignation was left in plaintiff's possession and public disclosure was made by both parties;

(3) the plaintiff on December 6, 1977, advised defendant in writing that his resignation was effective at midnight.

(4) Hurley is continuing to hold himself out to be police chief.

At trial, the plaintiff, Leonard A. Meyer, the mayor of Palos Hills testified that during his first term in office he appointed Hurley to be chief

of police; the appointment was approved by the city council. On or about the time of the appointment on December 22, 1975, Meyer took a letter of resignation from Hurley. Hurley was not reappointed after Meyer's election to a second term; none of the officials were but all have continued to serve in office.

On November 26, 1977, Hurley and Meyer had a conference; no one else was present. They discussed a problem concerning a particular incident which had occurred earlier in the week and Hurley said that he and his wife felt it was time he (Hurley) got out. He was resigning. He said he would tell Meyer in a few days just how long he would need to stay on.

On November 29, Meyer complained to Hurley that he had been snubbed by some of Hurley's friends. Meyer told Hurley he was going to remove Hurley from his position and that he had the undated resignation in his possession. He said that Hurley could not stay on. Hurley objected to this, feeling it would destroy his possibilities for seeking employment elsewhere.

On December 5, 1977, Meyer sent Hurley a letter accepting his resignation effective as of midnight December 6. On December 6, he appointed Robert Zieler acting police chief.

Hurley testified that he was sworn in as chief of police on December 22, 1975. Prior to that, on December 20, 1975, he signed an undated resignation prepared by Meyer. On November 26, 1977, Meyer showed Hurley the letter and told him Hurley could put a date on it, or he (Meyer) would but, either way, Hurley was leaving. Hurley testified that he reminded Meyer that they had had a "gentleman's agreement" that Hurley would have a period of time in which to find other employment. Meyer said he would stand by it and asked how long he would need. Hurley said about three months but he would let him know the next week.

Hurley further testified that he and Meyer had another conversation in the mayor's office at about 6:30 p.m. on November 29, 1977. Meyer complained that Hurley's friends had snubbed him, and then told Hurley he was dating the resignation that night. Hurley said it was not valid but Meyer responded that it was.

While Hurley did not believe that the resignation was valid, he did tell the newspapers that he had resigned. He told one reporter that he would be working for another ninety days.

On December 7, 1977, Hurley wrote Meyer a letter which said in part: "This is to advise you that I hereby withdraw any resignation previously submitted to be effective in February of 1978 or any date prior that you have established."

There was also evidence that on December 1, 1977, Meyer told the city council Hurley was the chief of police and would be so until

February. Also, at a special meeting on December 8, 1977, the city council unanimously (with one abstention) voted not to accept Hurley's resignation and to restore him to his position as chief of police.

The trial court, after hearing the evidence ruled that:

(1) the undated resignation was signed by the defendant on December 20, 1975, before his appointment and therefore was void; and

(2) no oral resignation was tendered by the defendant to the plaintiff.

In closing argument before the trial court the plaintiff for the first time raised the point that section 3—7—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 3—7—2), provided that anyone appointed by the mayor cannot have a term longer than the mayor's, and that none of the mayor's appointees had been reappointed after the mayor's reelection: However, the plaintiff then argued that that particular statute is not applicable. The trial judge then indicated that he would stand by a previous ruling that under section 3—7—2, even if a person did resign from office, under the language of the statute he still continues in the office until a successor is chosen and qualified.

## I.

■■ The trial court determined that the written, undated letter of resignation was tendered before chief Hurley was appointed. In light of the plaintiff's testimony that the letter was written on or about the time of the appointment and chief Hurley's clear testimony that it was signed on December 20, before he was appointed, it is difficult to see how any other determination could have been made. For this reason, as the trial court ruled, the written resignation wws void under the doctrine set forth in *People ex rel. Dibelka v. Reinberg* (1914), 263 Ill. 536, 105 N.E. 715. As that court stated at 263 Ill. 536, 542-43, 105 N.E. 715, 717:

> "It was decided in *People v. Healy*, 231 Ill. 629, that members of the board of education were not subject to removal by the mayor, but it is contended relators had the right to resign, and that they did so. Respondents admit the resignations were signed by the relators and placed in the hands of the mayor before they were appointed, but it is contended that as the resignations were not recalled by the relators after their appointment but were permitted to remain with the mayor without objection, this was, in effect, a continued invitation or permission to the mayor to accept them at his pleasure, and the mayor having acted upon them, relators cannot now be heard to complain. We cannot agree with this contention. The authorities do not appear to be numerous upon the question, as in the nature of things such a question would rarely arise, but all the authorities we have been able to find hold a man cannot resign an office before he is an officer. Mechem on Public Officers (sec.

410) says: 'Upon the principle that one cannot resign what he does not yet possess, it is held that one who has not been elected to a public office cannot resign the same, or if elected cannot resign until the time has arrived when he is entitled by law to possess the same and he has taken the oath and given the required bond and entered upon the discharge of his duties.' 23 Am. & Eng. Ency. of Law, 421, *In re Corliss*, 11 R. I. 638, (23 Am. Rep. 538,) and *Miller v. Board of Supervisors of Sacramento County*, 25 Cal. 93, are to the same effect. In our judgment the rule announced in these authorities is sound, but if no authority could be found upon the question it would seem the only conclusion which could be reached is, that a man cannot resign an office to which he has not been elected or appointed. It was never contemplated that where the law conferred the power to appoint but not to remove, the power to remove might be conferred by requiring a person, before appointment, to place his resignation in the hands of the appointing power. Such a paper is invalid when signed, and lapse of time cannot render it valid."

## II.

While the evidence was in serious conflict as to whether Hurley orally resigned his position, we are not convinced that the evidence when viewed most favorably to the defendant so overwhelmingly favored the plaintiff that no verdict for the defendant based on the evidence could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Thus, the issue was properly one for the trial court's determination as trier of fact.

The plaintiff has contended that the defendant's statement to the newspapers that he had resigned, his written withdrawal of the resignation, his acknowledgment under oath that the question was when the resignation would be effective and the action of the city council in refusing the resignation all prove tht Hurley had resigned. We disagree. All of the defendant's actions are easily explainable in light of the fact that the plaintiff, as he clearly states in his testimony, was improperly attempting to use the undated written resignation to remove Hurley from office, thus circumventing the procedures set up by law for that very purpose. In light of this, it is obvious that Hurley might choose to tell the press he had resigned rather than concede he had been fired, especially since Hurley had the undated letter in his possession. Likewise, as to plaintiff's second contention, Hurley's written attempt to withdraw the resignation referred to any resignation; Meyer was, after all, claiming he could use the undated resignation. It does not, therefore, follow that by the attempt Hurley was conceding he had orally resigned. Indeed the

words "any resignation previously submitted" clearly indicate that Hurley was not conceding that any resignation at all had been submitted. Hurley did not testify that the only disagreement between them was when he would leave. He did indicate that when Meyer said he intended to use the undated resignation, that he (Hurley) would need about three months to locate other employment. This might indicate that Hurley was inclined at that moment to yield to *force majeure*; it does not *per se* indicate in any way that Hurley himself intended to resign. And Hurley repeatedly testified that he did not resign although he had been advised by Meyer that the undated letter was valid. Finally, the conduct of the city council in rejecting the "resignation" hardly proves that Hurley orally resigned the position.

### III.

■■ ■ The appellant has also asked us to reverse the trial court's conclusion that under section 3—7—2 of the Illinois Municipal Code a resignation would not be valid until the successor has been duly appointed and has qualified. This issue is not properly before us for determination. First, it is doubtful whether the trial court ruled on this issue since it was not incorporated in his order. Second, since both parties have agreed that section 3—7—2 is not applicable, it would be improper for us to speculate on the correct interpretation of that section of the statute. Illinois courts may not render advisory opinions. (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 121 N.E.2d 486; *People ex rel. Johnson v. Doglio* (1976), 43 Ill. App. 3d 420, 356 N.E.2d 1360.) Even if we assume that the trial court's conclusions were affected by his belief that any resignation would be ineffective until the replacement had qualified, and even if we further assume that this conclusion was erroneous, we must still affirm since the trial court's express determination that there was no resignation is supported by the evidence. *Continental Grain Co. v. FMC Corp.* (1975), 27 Ill. App. 3d 819, 327 N.E.2d 371, *appeal denied* (1975), 60 Ill. 2d 596.

For the foregoing reasons, the judgment below is affirmed.

Affirmed.

JOHNSON, P. J., and LINN, J., concur.