THE PEOPLE ex rel. John J. Kinsella et al. Appellants, vs.
ROBERT E. CROWE, State's Attorney, Appellee.

*Opinion filed October 22, 1927.*

1. PARKS—*legislature may give control of streets to park com-
missioners.* The manner of use of streets of a city or village is
within the control of the legislature, which may provide for the
transfer of the control of them from the city or village to park
commissioners.

2. SAME—*ordinances of park commissioners may be directly re-
viewed under section 118 of Practice act.* The South Park Com-
missioners of the city of Chicago is a public municipal corporation
vested with certain governmental powers of a political character,
and judgments and decrees in cases involving the validity of its
ordinances may be reviewed directly by the Supreme Court in the
manner provided by section 118 of the Practice act.

3. SAME—*act of 1917 did not repeal acts of 1879 and 1895 for
taking of streets within park district.* The act of 1917, providing
for the selection and taking of a street or part of a street by park
commissioners even though extending beyond the boundaries of
the park district, did not repeal the acts of 1879 and 1895, provid-
ing for the selection and taking of streets only within the district.

4. SAME—*when invalid portion of ordinance of park commis-
sioners does not render entire ordinance void.* A statute or ordi-
nance which is valid in part and in part void because in excess of
the legislative power will not necessarily be declared void in its
entirety but courts will disregard the excessive exercise of power
and preserve so much as is within the legislative power, and where
an ordinance of park commissioners for taking control of a street
provides for the taking of a part of the street which is beyond
the park district, contrary to the provisions of the statute under
which the power is exercised, the ordinance will be valid as to
that portion of the street which lies within the district.

5. SAME—*when consent to taking of street is sufficient under
act of 1895.* Where consent of a majority of the property owners
has been filed with park commissioners for the taking of control of
a street within the park district, the commissioners are authorized,
under the act of 1895, to take control of the street although the
ordinance selecting and taking the street is not adopted by the
commissioners until five years thereafter, although such consent is
never recorded and although much of the frontage property has

in the meantime changed hands, as the statutory provision for such consent makes no limitation of time within which it shall be operative, or for recording the written consent, or for its revocation by conveyance of the property.

6. Quo warranto—*when an individual is entitled to petition by State's attorney—mandamus.* Where an individual who has a private right which may be enforced under the Quo Warranto act presents a petition for leave to file an information in the nature of *quo warranto* to the State's attorney for his signature, it is the duty of the State's attorney, if the petition is in proper form and the accompanying affidavit of facts is *prima facie* sufficient, to sign the petition and present it to the court, and he may be compelled by *mandamus* to do so.

7. Municipal corporations—*rules for construction of statutes apply to ordinances.* Rules for the construction of ordinances are the same as those for the construction of statutes, and the fact that one part of a statute or ordinance is invalid does not authorize the courts to declare the remainder void also unless all the provisions are connected in subject matter, dependent on each other, operate together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed that one would have been passed without the other.

Appeal from the Superior Court of Cook county; the Hon. Hosea W. Wells, Judge, presiding.

William E. Furlong, for appellants.

Schnackenberg & Hansen, William B. Walrath, and William H. Gruver, (Elmer J. Schnackenberg, of counsel,) for appellee.

Mr. Justice Dunn delivered the opinion of the court:

The superior court of Cook county sustained a demurrer of Robert E. Crowe, State's attorney of that county, to a petition of the People of the State of Illinois, on the relation of John J. Kinsella, Nora Kinsella, Lydia B. Helwig, John E. Lynch and Frances Lynch, praying for a writ of *mandamus* commanding the State's attorney to sign and

file a petition for leave to file an information in the nature
of *quo warranto* on behalf of the People and on the rela-
tion of the petitioners against the South Park Commission-
ers, a municipal corporation for park purposes, requiring
it to show by what warrant it claimed and exercised the
power of control, regulation, improvement and government
of Loomis street, in the city of Chicago, between West
67th street and the south line of West 87th street, and by
what warrant it claims and exercises the power to initiate
and levy a special assessment for the improvement of that
part of such street as a boulevard. The petitioners asked
leave to file certain amendments to the petition, which were
at the same time presented to the court, but the court over-
ruled the motion, entered a judgment that the petitioners
take nothing by their writ and that the respondent go with-
out day and recover his costs. The petitioners have ap-
pealed directly to this court, the trial judge having certi-
fied that the validity of a municipal ordinance is involved
and that in his opinion the public interest requires the al-
lowance of a direct appeal to this court.

The South Park Commissioners is a municipal corpo-
ration created by a special act of the General Assembly in
1869, (1 Private Laws of 1869, p. 358,) having the man-
agement and control for park purposes of the South Park
District, whose territory consists of the three towns of
Lake, South Chicago and Hyde Park, all lying within the
city of Chicago. Loomis street is a north and south street
of the city of Chicago, and part of it, extending from
West 67th street to West 87th street, is within the town
of Lake and the South Park District. The center line of
West 87th street is the south line of the South Park Dis-
trict, and Loomis street extends south beyond 87th street
to West 99th street, that part of the street south of the
center line of West 87th street being in the town of Calu-
met, outside of the South Park District. The petitioners
are owners of real estate in the South Park District abut-

ting upon that part of Loomis street lying between West 67th street and West 87th street.

On February 2, 1923, the South Park Commissioners passed an ordinance selecting the part of Loomis street which has been described, between West 67th street and the south line of West 87th street, for boulevard purposes, and assuming power and authority to regulate, control, improve and maintain such part of Loomis street for those purposes. The park commissioners intend to widen Loomis street, which is now 66 feet wide, and pave and improve it as a boulevard, and are about to pass an ordinance providing for so doing and for paying the cost, estimated at $500,000, by a special assessment on the property of the petitioners and other property abutting on the street and for three blocks east and west thereof, and are about to file in court a petition for making such assessment, and each lot of the petitioners will, under the plan of the commissioners, be specially assessed $300 if the plan is carried into effect. The petitioners object to the improvement and assessment on the ground that the control of the street is legally vested in the city of Chicago and that the South Park Commissioners has never acquired the right to regulate, control, improve and maintain it, but that the petitioners cannot have this objection heard in the proceeding for confirmation of the special assessment, (*Aldis* v. *South Park Comrs.* 171 Ill. 424,) and they are seeking to have the legality of the acquisition of the street determined by proceedings in the nature of *quo warranto.*

The petition for the writ of *mandamus* was verified by the affidavit of the petitioners as to its truth, and there was attached to it and filed with it the petition for leave to file an information in the nature of *quo warranto,* which it was sought to compel the State's attorney to sign. This petition represented that the South Park Commissioners, for seven months past and more, exercised, and still does exercise, powers not conferred by law,—that is, the power

of control, regulation, improvement and government of
Loomis street between West 67th street and the south line
of West 87th street, by taking steps to widen and pave the
driveway and otherwise improve that part of the street as
a boulevard and to levy a special assessment on abutting
property and other property in the South Park District to
pay the cost of such improvement; that the commission-
ers claim the right to control, regulate, improve and main-
tain such part of Loomis street by virtue of the ordinance
passed by the commissioners on February 2, 1923, pretend-
ing to select and take that part of the street for boulevard
purposes and assuming to the commissioners full power
and authority to regulate, control, improve and maintain the
part of Loomis street so selected and taken; that Loomis
street is, and has been for more than ten years, a public
street; that the frontage of all lots and lands abutting upon
Loomis street from West 67th street to West 87th street
is 23,202.95 feet; that the street from West 67th street to
71st street is an old macadam pavement, pitted, rutted and
well worn, with a driveway 30 feet wide, from 71st to
77th street is unpaved, from 77th to 83d street is an ex-
cellent asphalt pavement, with a 28-foot driveway and all
other usual city improvements, and from 83d street to
the north line of 87th street is unpaved. West 87th street
at its intersection with Loomis street is 100 feet wide from
the north to the south line, and its center line at Loomis
street, and for more than a mile each way east and west,
is the boundary line between the town of Lake and the
town of Calumet. West 67th street, (an east and west
street,) which is also called Marquette road, and the exten-
sion of Loomis street north of it for a distance of more
than a mile, which is called Loomis boulevard, have been
public boulevards under the jurisdiction and control of the
South Park Commissioners since 1907. At the northeast
corner of Marquette road and Loomis boulevard there has
been continuously since 1904 a public park of sixty acres,

called Ogden Park, under the jurisdiction and control of
the South Park Commissioners. The territory of the city
of Chicago touches, bounds and is contiguous to the pub-
lic boulevards called Marquette road and Loomis boulevard
and the public park called Ogden Park, and has done so
at all times since 1907. Loomis street between West 67th
street (or Marquette road) and the south line of West 87th
street has been at all times since 1907 a connecting street
leading to Marquette road, Loomis boulevard and Ogden
Park from the town of Calumet in the city of Chicago,
and from that part of the town of Lake in the city of Chi-
cago which lies south of Marquette road and Ogden Park.
Loomis street between West 67th street and West 87th
street before February 2, 1923, was a public street under
the jurisdiction and control of the city of Chicago and no
part of it had been restricted to the purposes of a boule-
vard, but since the passage of the ordinance of that date
the South Park Commissioners claims to have the right of
control over that part of Loomis street for the purpose of
making it a boulevard. On March 28, 1917, the city coun-
cil passed an ordinance giving consent to the South Park
Commissioners to take, regulate, improve, control and gov-
ern Loomis street between West 67th street and the south
line of West 87th street, with the condition that the com-
missioners should within three months select and take the
street and otherwise the ordinance should cease to be of
any force. The commissioners failed to select and take
the street within the time fixed by the ordinance and the
authority to do so therefore ceased. Afterward, on No-
vember 26, 1917, an identical ordinance was passed by the
city council except that the time limitation for the exercise
of the authority conferred was fixed at six months. On
January 16, 1918, a petition was filed with the commis-
sioners purporting to be the consent of the owners of
13,975.73 feet of the total frontage of 23,202.95 feet of
property abutting on Loomis street from Marquette road

to 87th street to the selecting and taking by the South Park Commissioners of jurisdiction and control over that portion of Loomis street. The commissioners did not select and take the street before the expiration of the six months' limitation in the ordinance, and the consent given by the ordinance therefore ceased to be operative. On May 13, 1918, the city council passed another ordinance identical with that of November 26, 1917, and the South Park Commissioners on November 20, 1918, by a motion duly passed at a regular session and entered in the official journal of its proceedings, decided to take no action at that time in regard to selecting and taking the portion of Loomis street in question because of litigation then pending relative to the widening of Loomis street for a distance of 980 feet within the portion proposed to be taken, but the commissioners expressed no intention to select and take the part of the street when the litigation should be completed. Four other ordinances identical in terms with the ordinance of March 28, 1917, except for the time limitation, were passed by the city council on November 18, 1918, May 19, 1919, November 17, 1919, and November 24, 1920, respectively, the last ordinance containing a limitation of one year from its approval for its acceptance by the commissioners. Each of the ordinances ceased to be in effect and the consent given by them was withdrawn by the failure of the South Park Commissioners to exercise the power within the time limited. Afterward, by an ordinance passed on December 22, 1922, the city of Chicago again gave its consent as it had done by the previous ordinances, and on February 2, 1923, the South Park Commissioners passed an ordinance selecting and taking for boulevard purposes Loomis street between West 67th street and the south line of West 87th street, in the city of Chicago. This ordinance is set out in full in the petition for leave to file an information. Since the passage of the ordinance the South Park Commissioners has not exercised physical acts of con-

trol over the part of Loomis street so selected and taken, except that at very small cost the commissioners in the summer of 1925 repaired three patches of the roadway between 79th and 83d streets and also repaired a few bad spots in the roadway between 67th and 69th streets. The street has continued by the name of Loomis street, and not as Loomis boulevard. It has been permitted to remain in the same physical condition as it was on February 2, 1923, the then unpaved section of one-half of the total length of two and a half miles being still unpaved. The lighting has continued to be done by and at the expense of the city of Chicago, which has continued to exercise the functions of street cleaning, the repairing of the paved portions and the sprinkling and flushing thereof in summer seasons, and the individual property owners have continued to sprinkle, seed and clip the lawns on the parkway between the sidewalks and the driveway the same as when the city of Chicago had control, contrary to the custom of the South Park Commissioners to have such work done by park board employees on streets and boulevards under its control and to prohibit property owners from doing such work. The police officers of the city of Chicago have continued to patrol the street and to enforce the lawn-sprinkling and other ordinances of the city of Chicago, and no park police have been regularly assigned to said street by the commissioners. The petition further shows that prior to the passage of the ordinance of February 2, 1923, the South Park Commissioners did not obtain consent to such selecting and taking from the owners of two-thirds of the frontage of all property abutting upon the part of Loomis street so pretended to be selected and taken, and the street, so far as it was pretended to be selected and taken by virtue of the ordinance, did not lie entirely within the district and territory the property of which was taxable for maintenance of the park boulevard and driveway to which Loomis street as a connecting street leads,—that is to say, it did

327—8

not lie entirely within the South Park District, but that part of the street between the center line of West 87th street and its south line, being a distance of 50 feet, is in the town of Calumet and is not included within the South Park District. It was further alleged that the majority consent of property owners upon which the ordinance of February 2, 1923, relied, was the same which was filed with the commissioners on January 16, 1918, and at no time subsequent to that date did the commissioners obtain the consent in writing to their selecting and taking part of Loomis street from the owners of a majority or any other portion of the frontage of the lots and lands abutting on the street so far as taken. The period of over five years between January 16, 1918, and February 2, 1923, was a period of great activity in the sale of real estate in Chicago, and especially of lots and lands abutting on Loomis street between West 67th and West 87th streets. The consents filed January 16, 1918, were never recorded, and among such consents, in some instances, whole blocks of vacant property were signed for by the Chicago Title and Trust Company, a corporation, as trustee, and by other owners of large frontages, and in some instances the land was subdivided into lots at or about the same time and the lots were sold individually to purchasers who erected their homes thereon but who had no notice or knowledge, when purchasing, that consent had been executed and filed. Within the period between the filing of the consents and the passage of the ordinance more than a majority of the total frontage on Loomis street between West 67th and West 87th streets changed ownership. Out of the majority frontage of 13,975.73 feet for which consent was given on January 16, 1918, as hereinbefore described, 7125 feet (more than a majority of the same frontage) changed ownership by sale or otherwise, and in many instances lots were sold from two to four times. At the time of the passage of the ordinance of February 2, 1923, and for two months

prior thereto, the frontage represented in the consent of January 16, 1918, which still remained in the hands of the same owners who had signed the consents was less than thirty per cent of the aforesaid total abutting frontage on said part of Loomis street,—that is to say, 23,202.95 feet. Of the consenting frontage of 7125 feet which was sold or transferred within said period of over five years, the purchasers or new owners of 3000 feet and more of said frontages had no notice or knowledge of the consent filed January 16, 1918, for their respective properties, and would not have given their consent at any time for such selecting and taking for boulevard purposes.

The manner of use of streets of a city or village is within the control of the legislature, which may provide for the transfer of the control of them from the city or village to park commissioners. (*People* v. *Walsh*, 96 Ill. 232.) Acts for this purpose were passed by the legislature in 1879, 1895 and 1917. (Laws of 1879, p. 216; Laws of 1895, p. 290; Laws of 1917, p. 621.) These acts authorized every board of park commissioners or park authorities to connect any public park, boulevard or driveway under its control with any incorporated city, town or village by selecting and taking any connecting street or streets thereof leading to such park, boulevard or driveway, provided that the consent of the corporate authorities having control of any such street or streets or part thereof, so far as selected and taken, shall first be obtained. The first two of these acts contained further provisos that the streets so selected and taken, so far as taken, shall lie within the district or territory the property of which shall be taxable for the maintenance of such parks, and that the consent in writing of the owners of the majority of the frontage of the lots and lands abutting on such streets, so far as taken, shall be first obtained. The act of 1917 omits these last two provisos in regard to the consent of abutting owners and authorized the park commissioners to accept and add to any park or

parks under their control any street in its entirety, or parts thereof, which adjoins or runs parallel with any boundary line of the same. This act contains the further proviso that unless such street or streets, or part or parts thereof, shall have been previously restricted to boulevard or pleasure driveway purposes pursuant to law, the consent of the owners of two-thirds of the frontage of all property abutting upon said street or streets, or part or parts thereof, shall also first be obtained. Since the part of Loomis street sought to be taken had not previously been restricted to boulevard or pleasure driveway purposes pursuant to law and there was no consent of the owners of two-thirds of the frontage of all property abutting upon that part of the street, the act of 1917 gave no authority to select and take the street, and the appellee does not contend that authority was given by that act. He bases the right of the park commissioners on the act of 1895, and the appellants contend that this act was insufficient to confer power on the commissioners to pass the ordinance of February 2, 1923, both because the part of the street sought to be taken did not lie within the district or territory the property of which was taxable for the maintenance of the park,—that is, the South Park District,—and because at the date of the passage of the ordinance there was no consent in writing of the owners of a majority of the frontage of the lots and lands abutting on the part of the street to be taken. It is the question of the validity of this ordinance certified by the judge of the superior court which gives the right of a direct appeal to this court. South Park Commissioners is a public municipal corporation vested with certain governmental powers of a political character. (*People* v. *Walsh, supra.*) Judgments and decrees in cases involving the validity of its ordinances may be reviewed by this court directly in the manner provided by section 118 of the Practice act.

The Quo Warranto statute (chapter 112 of the Revised Statutes) has greatly extended the jurisdiction of the cir-

cuit and superior courts which is inherent in them by virtue of the constitution. The writ of *quo warranto,* which at common law was a prerogative remedy used only for the correction of public wrongs, has been succeeded by the information in the nature of *quo warranto,* which is used to enforce the rights of private individuals as well as those of the public. Where an individual who has a private right which may be enforced under the Quo Warranto statute presents a petition for leave to file an information in the nature of *quo warranto* to the State's attorney for his signature, it is the duty of the State's attorney, if the petition is in proper form and the accompanying affidavit of facts is *prima facie* sufficient, to sign the petition and present it to the court, and he may be compelled by *mandamus* to do so. *People* v. *Healy,* 230 Ill. 280; *People* v. *Healy,* 231 id. 629; *People* v. *Wayman,* 256 id. 151.

The objection of the appellee to signing and filing the petition was two-fold: (1) Proper evidence of facts was not presented to the appellee and no form of information to be filed was presented with the petition; (2) the petition did not state a cause of action. In the view we take of the case it will be necessary to consider only the latter objection.

The South Park Commissioners had no power on February 2, 1923, to exercise any jurisdiction or authority over Loomis street beyond the boundary of the district,—that is, south of the center line of West 87th street. It is not alleged that it intends to do so. The improvement which it is alleged it now intends to make as the exercise of its first important act of control over the part of Loomis street in question, is the improving of the street as a boulevard between the south line of Marquette road and the center line of West 87th street, wholly within the park district, omitting the 50 feet outside. The act of 1917 which provided for the selection and taking of a street or part of a street by the park commissioners, even though extending

beyond the boundaries of the district, did not repeal the acts of 1879 and 1895, which provided for the selection and taking of streets only within the district. The South Park Commissioners had no power to select and take any part of the street south of the center of West 87th street, and its ordinance purporting to do so was ineffective for that purpose. Is the ordinance therefore wholly void, as well for the two and a half miles lying within the district as for the 50 feet lying beyond its boundaries? The appellants insist upon the affirmative of this question, while the appellee contends for the negative.

The written consent signed by the owners of the majority of the frontage on Loomis street between 67th and 87th streets was sufficient to authorize the commissioners to select and take under their control that part of the street. It did not authorize them to select and take under their control the 50 feet of the intersection of Loomis street with 87th street south of the center line of the latter. The commissioners, however, when they adopted the ordinance of February 2, 1923, selected not only the part of Loomis street within the district but the 50 feet south of the district constituting the intersection with 87th street, and thereby declared full power and authority to regulate, control, improve and maintain all of the portion of the street included in the ordinance to be vested in and assumed by the South Park Commissioners.

It is objected on the part of the appellants that this ordinance is entire; that each part is connected with and essential to the remainder, and the invalidity of one part renders the whole void. Rules for the construction of ordinances are the same as those for the construction of statutes. (*Illinois Central Railroad Co.* v. *City of Chicago,* 169 Ill. 329; *Stanton* v. *City of Chicago,* 154 id. 23.) If the provisions of a statute "are so mutually connected with and dependent upon each other as conditions, considerations and compensations for each other as to warrant

the belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional all the provisions which are thus dependent, conditional or connected must fall with them." (Cooley's Const. Lim. 179.) The fact that one part of the statute is unconstitutional does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, dependent on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. The statute may be in part void and in part valid, and the question whether the valid part of the act may be given effect and the void parts disregarded usually arises where the void and valid parts of the enactment are contained in separate sections, though the void and valid parts may sometimes be found in the same section, the void part being expressed in language which may be separated from the valid part and rejected without affecting the valid part. Many cases hold that where a statute accomplishing all its results by the same general words in a single section has covered subjects as to which the legislature could and subjects as to which it could not constitutionally enact laws, the language cannot be restricted lawfully to the constitutional class because the part applicable to that class is not separable from the part applicable to the unconstitutional class so that each may be read and may stand by itself, and the constitutionality of the act is thus made to depend upon its form. There are other cases, however, which hold that a law will not be held void because the legislature has attempted more than it had the constitutional power to make effectual, and that the courts, treating the question as one of legislative power and not of verbal form, will separate statutes valid in part and in part void because in excess of the legislative power and will disregard the excessive exer-

cise of power and preserve so much as is within the legisla-. tive power. (*Scown* v. *Czarnecki,* 264 Ill. 305.) The rule has had frequent application in the case of statutes prohibiting the sale of intoxicating liquors with no exemption from the operation of the statute of liquors imported and sold in the original packages, and the statutes have been held unconstitutional and void as to imported liquors sold in the original packages but valid as to all other sales. The doctrine of the cases is, "that if a law which is constitutional under certain limitations exceeds those limitations it may still be operative within its legitimate sphere and void only for the excess." (*Commonwealth* v. *Gagne,* 153 Mass. 205; *Commonwealth* v. *Kimball,* 24 Pick. 359; *State* v. *Amery,* 12 R. I. 64.) This principle has been followed in many cases, some of which are cited in *Scown* v. *Czarnecki, supra,* on page 328. The same rule of construction applies to the ordinance in question. The limitation on the legislative power of the commissioners is not constitutional but has its origin in the act granting them the right to take control of the street, and, on the principle announced in the cases which have been cited, so far as the ordinance is within the limitation fixed by the law it is valid and so far as it exceeds that limitation it is void.

The consent of the owners of a majority of the frontage was given on January 16, 1918. There were many changes of ownership, so that for two months before February 2, 1923, less than thirty per cent of the total frontage remained in the ownership of those who had given their written consent to the taking of the street by the park commissioners. The relators acquired all their abutting property within the five-year period between January 16, 1918, and February 2, 1923, and it was all included in the consent filed on the former date, but the relators had no knowledge of such consent until January, 1926. More than a hundred other owners of property abutting on Loomis street

will be affected and injured in their private rights in the same manner and to the same extent as the relators and have associated themselves together to protect their private rights as the Loomis Street Owners' Protective Association. The appellants contend that the consent given more than five years before the selection and taking of the street was insufficient to authorize the action of the commissioners in taking it, and that the consent required of the owners refers to owners at the time the street is taken. The statute requires only that the consent in writing of the owners shall be first obtained, and there is no limitation of time within which it shall be operative or provision for recording the written consent or for its revocation by a conveyance of the property. It is not an instrument affecting the title to real estate and does not constitute an incumbrance on the title. It may be that it was subject to revocation by the owners before final action by the commissioners, as in the cases of *Littell* v. *Board of Supervisors,* 198 Ill. 205, *Theurer* v. *People,* 211 id. 296, *Kinsloe* v. *Pogue,* 213 id. 302, and *Mack* v. *Polecat Drainage District,* 216 id. 56, but the consent in writing of the owners was valid when given and removed the restriction on the power conferred on the commissioners by the statute. The commissioners were then authorized to act, and could not be deprived of their authority except by some positive act of the owners.

Error is assigned on the denial of leave to amend the petition for *mandamus.* The amendments presented with the motions showed on their face that they did not obviate the objections to the petition, and the motions were therefore properly denied.

The judgment of the superior court is affirmed.

*Judgment affirmed.*