ROBERTO H. TODD ET AL., Petitioners and Appellants, v. BENJAMIN J. HORTON, ATTORNEY GENERAL OF PUERTO RICO, Respondent and Appellee.

No. 6668. Argued January 14, 1937.—Decided April 15, 1937.

*Miguel Guerra Mondragón* for appellants. *B. Fernández García, Attorney General, R. Cordovés Arana, Emilio de Aldrey, and T. Torres Pérez, Assistants Attorney General,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Roberto H. Todd, José Portilla, Rafael M. Pietrantoni, Eduardo G. González, Joaquín S. Ledesma, Luis Colón, and Rafael Lamadrid applied to the District Court of San Juan, on December 13, 1933, for a writ of mandamus directed to Benjamin J. Horton, who was then Attorney General of Puerto Rico, and alleged the following facts:

"3. On October 19, 1933, they requested said respondent to sign a petition addressed to the District Court of San Juan for leave to

institute a *quo warranto* proceeding against Jesús Benítez Castaño, Rafael Rivera Zayas, Eduardo R. González, Gabriel de la Haba, Ramón Ramos Casellas, and Germánico S. Belaval, with the object of attacking the validity and legality of the respective offices held by them, the first-named as City Manager of the Capital, and the others as Commissioners. Said request and petition are attached to the present petition, marked 'Exhibit A,' and form an integral part thereof.

"4. On October 28, 1933, respondent addressed to the petitioners herein, through their undersigned attorneys, an official communication, which is attached to this petition as 'Exhibit B' and forms an integral part thereof, refusing to authorize the said *quo warranto* petition for the reasons which appear more in detail in said refusal.

"5. The respondent Benjamin J. Horton, as Attorney General of Puerto Rico, had then and still has the unavoidable duty of signing, filing, and submitting to the District Court of San Juan the said petition of your petitioners requesting leave of said court to file the said *quo warranto* petition, since the latter, as well as the documents which accompanied it, were, and are, drafted and presented in due legal form.

"6. Respondent has no discretion whatever to refuse, as he has refused, to sign and submit to the District Court of San Juan the said *quo warranto* petition mentioned in paragraph 3 of this petition for mandamus.

"7. The respondent, Benjamin J. Horton, by refusing to authorize the said *quo warranto* petition, has caused your petitioners damages in the sum of $11,000.00, thus: to Roberto H. Todd, $5,000; and to each of the other petitioners, $1,000.00.

"8. The petitioners lack an adequate, speedy, and efficient legal remedy to obtain the relief hereinafter prayed for except by mandamus."

The court ordered the defendant to appear on December 26, 1933, and show cause, if any, why the writ requested should not be issued.

The court heard both parties on the day set. The reasons stated by the Attorney General in explanation of his attitude were that in his judgment the law which the petitioners sought to attack was constitutional and as a question of public interest was involved, his discretion to authorize the writ of *quo warranto* was absolute.

On February 7, 1934, the court refused to issue the writ. Petitioners appealed. On April 9 following they filed the transcript of record. They requested nine extensions of time of thirty days each to file their brief. The last expired on February 8, 1935, without the brief being filed, and the court on March 21 set the hearing for April 8 to show cause why the appeal should not be dismissed for want of prosecution. On that day the parties stipulated that the appellants would have until the 11th to file their brief and the court approved the stipulation. The brief was not filed and the appellants were again summoned to show cause why the appeal should not be dismissed for lack of prosecution. On the day set, June 17, 1935, the appellee joined the appellants in requesting that the appeal be not dismissed, as the appellants had finally filed their brief on the preceding day. The court agreed and the case remained on the calendar, and it was heard after several continuances on January 14, 1937.

The brief of appellants contains only seven typewritten pages. They assign two errors committed, in their judgment, by the lower court in holding that the discretion of the Attorney General was absolute and that the appellants lacked individual rights to bring the *quo warranto* proceeding.

In arguing their first assignment the appellants invoke section 2 of the *quo warranto* law of 1902, and cite the decisions of this Supreme Court in *People* v. *Oliveras,* 33 P.R.R. 707; *People* v. *López,* 29 P.R.R. 754; *Cuprill* v. *Parra et al.,* 33 P.R.R. 721; *Barrera et al.* v. *District Court of Arecibo,* 10 P.R.R. 181; and *People ex rel. Pérez* v. *Manescau,* 33 P.R.R. 703, and those of the Supreme Court of Illinois in *People* v. *Healy,* 231 Ill. 629; and *People* v. *Crowe,* 327 Ill. 106.

The law invoked, which is really applicable, in its pertinent part reads thus: ''That in case any person should usurp or unlawfully hold or execute any public office . . . . the Attorney General or any *Fiscal* of the respective District Courts, either of his own accord or at the instance of

any individual relator, may present a petition to the District Court of competent jurisdiction for leave to file an information in the nature of '*quo warranto*' in the name of the People of Porto Rico. . . ." Sec. 780, Revised Statutes of 1902, p. 282; section 641, Code of Civil Procedure, 1933 ed., p. 264.

And the cited decisions of this court hold that "municipal officials are public employees or offcials, and *quo warranto* proceedings may be brought against them," *Barrera et al.* v. *District Court of Arecibo, supra;* that "when the question is whether or not a member of the council of administration elected by a municipal assembly should be removed because of his disqualification to hold the office the proper proceeding is that of *quo warranto*," *People* v. *López, supra;* that "when a public official has committed or allowed any act which under the law involves a forfeiture of his office *quo warranto* lies," *People ex rel. Pérez* v. *Manescau, supra;* that "the Attorney General of Porto Rico may bring *quo warranto* proceedings for the removal of a mayor who is usurping the office," *People* v. *Oliveras, supra;* and that "an officer can not maintain a bill in equity to enjoin his removal from office and the appointment of his successor. If his successor has been appointed his remedy is *quo warranto*," *Cuprill* v. *Parra et al., supra.*

We agree with the appellants that, in accordance with said law and decisions, their case falls within a *quo warranto* proceeding; but that is not the question involved in the present mandamus proceeding. What we must consider and decide here is whether the Attorney General having refused to authorize the *quo warranto,* he can and must be compelled to authorize it.

It is on that point that the appellants cite the case of *People* v. *Healy, supra,* and *People* v. *Crowe, supra,* both cases from Illinois, in which State the legal provision authorizing *quo warranto* in connection with public offices is the same as that of Puerto Rico.

In the former of said cases it was held:

"A state's attorney has no arbitrary and uncontrolled discretion to file or refuse to file a petition for leave to file an information in the nature of a *quo warranto* upon the application of an individual having a personal right enforceable by that proceeding; and if one having a private and personal grievance, for which the proceeding is the only remedy, presents a proper petition to the attorney, with evidence of the facts necessary to establish his right, the attorney must apply for leave to file an information, and if he refuses he may be compelled to do so by mandamus." 83 N. E. 453.

And in the latter:

"When an individual, having a private right which may be enforced under *quo warranto* statute, presents a petition for a leave to file an information in the nature of *quo warranto* to the state's attorney for his signature, it is his duty, if the petition is proper form and the accompanying affidavit of facts is prima facie sufficient, to sign the petition and present it to the court, and he may be compelled to do so by mandamus." 158 N. E. 451.

The lower court in rendering its decision had in mind the doctrine stated in said cases and denied the petition for mandamus because the public interest involved was predominant. It said, correctly, in our judgment:

"We must then decide whether the *quo warranto* petition submitted in this case to the Attorney General, is based on an individual or personal right of the plaintiffs or if on the contrary it involves a question of public interest.

"This is not an ordinary case of *quo warranto* wherein a person claims that somebody else has deprived him of, or occupies illegally, an office existing at the time that the petition is filed. It is sought by the petitioners to be reinstated in offices which ceased to exist three years ago, for which it would be necessary first to declare unconstitutional the law creating the offices held by the present incumbents. In order that petitioners may be reinstated in the offices to which they claim to be entitled, it is necessary, as we have said, to declare unconstitutional and consequently void *ab initio*, Act No. 99 of 1931 (Session Laws, p. 626), by which the public corporation denominated 'Capital of Puerto Rico' was created. Such a declaration would carry with it the nullity of all the acts of the Municipal

Government of the Capital of the Island during the last three years since the present incumbents could not then even be regarded as *de facto* officers, for before there can be an officer *de facto* there must be an existing office *de jure*. In other words, in order that there can be a *de facto* officer it is indispensable that the law creating the office be constitutional. See 22 R.C.L. 590; 1 Bouvier's Law Dictionary (3rd ed.) 762; Dillon, Municipal Corporations, sec. 276; and the last paragraph of the Note in 21 L.R.A. 141.

"It would suffice to consider the great disturbance which would be caused to the public if Act No. 99 of 1931 were declared unconstitutional, in order to reach the unavoidable conclusion that the question raised by plaintiffs involves the public interest to such an extent that it makes the discretion of the Attorney General to authorize or not the filing of the *quo warranto* absolute and arbitrary, and renders mandamus as improper, in spite of the individual rights which the petitioners may have. But furthermore and believing it very pertinent to the instant case, we take the following from the Supreme Court of Iowa:

" 'But in public affairs, where the people have organized themselves, under color of law, into the ordinary municipal bodies, and have gone on year after year raising taxes, making improvements, and exercising their usual franchises, their rights are properly regarded as depending quite as much on the acquiescence as on the regularity of their origin, and no *ex post facto* inquiry can be permitted to undo their corporate existence. Whatever may be the rights of individuals before such general acquiescence, the corporate standing of the community can be no longer open to question.' The case cites *Rumsey* v. *People*, 19 N.Y. 41, and *Lanning* v. *Carpenter*, 20 N. Y. 447. Mr. Cooley, in his work on Constitutional Limitations (page 312, 4th ed.), says: 'In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the state as such . . . And the rule, we apprehend, would be no different if the Constitution itself prescribed the manner of incorporation. Even in such a case, proof that the corporation was acting as such, under legislative action, would be sufficient evidence of right, except as against the state, and private parties could not enter upon any question of regularity. And the state itself may justly be precluded, on principle of estoppel, from raising such objection, where there has been long acquiescence and recognition.' This, it is true, is a direct proceed-

ing by the state. And, while the language used is applied in part to collateral proceedings, it seems also to include actions by the state directly.'' *State ex rel. West* v. *Des Moines,* 31 L.R.A. 186, 192.

See the case of *Santiago* v. *Feuille,* 10 P.R.R. 408, decided by this Supreme Court in 1906.

As we know, the judgment of the district court was rendered in February 1934. Since then, three more years have elapsed. The disturbances which the issuance of the writ would cause would still be greater, and the delay is due to the appellants themselves.

It might be advisable to add that, even though the appellants do not discuss in their brief the merits of the *quo warranto,* we have read the documents presented to the Attorney General and to the district court to serve as a basis for the petition, and we are not impressed in the sense that it is clear that the law creating the Government of the Capital is unconstitutional.

The judgment appealed from must be affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.