Roberto H. Todd, José Portilla, Rafael M. Pietrantoni, Eduardo G. González, Joaquín S. Ledesma, Luis Colón y Rafael Lamadrid, demandantes y apelantes, *v.* Hon. Benjamin J. Horton, Procurador General de Puerto Rico, demandado y apelado.

Núm. 6668.—*Sometido:* Enero 14, 1937. *Resuelto:* Abril 15, 1937.

*Miguel Guerra-Mondragón,* abogado de los apelantes; *Hon. Procurador General B. Fernández García, R. Cordovés Arana, Procurador General Auxiliar, Emilio de Aldrey y T. Torres Pérez, Subprocuradores,* abogados del apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Roberto H. Todd, José Portilla, Rafael M. Pietrantoni, Eduardo G. González, Joaquín S. Ledesma, Luis Colón y Rafael Lamadrid comparecieron ante la Corte de Distrito de San Juan el 13 de diciembre de 1933 y le pidieron que ordenara la expedición de un auto de *mandamus* contra Benjamin J. Horton, entonces Procurador General de Puerto Rico, basándose en los siguientes hechos:

"3.—Con fecha 19 de octubre de 1933 solicitaron del demandado aludido firmase una solicitud dirigida a la Corte de Distrito de San Juan para que ésta autorizase a su vez la presentación de una petición de *quo warranto* contra Jesús Benítez Castaño, Rafael Rivera Zayas, Eduardo R. González, Gabriel de la Haba, Ramón Ramos Casellas y Germánico S. Belaval encaminada a impugnar la validez y legalidad de los cargos que el primero ocupa, de Administrador de la Capital, y, de Comisionados, los demás. Dichas solicitud y petición se acompañan a la presente, como 'exhibit A', para que formen parte integrante de la misma.

"4.—Con fecha 28 de octubre de 1933 el demandado dirigió a los peticionarios, por conducto de los abogados que suscriben, una comunicación oficial, que se acompaña a esta petición como 'exhibit B' para que forme parte integrante de la misma, negándose a darle curso oficial a la petición de *quo warranto* mencionada por las razones que en dicha negativa con más particularidad aparecen.

"5.—El demandado Benjamín J. Horton, en su carácter de Procurador General de Puerto Rico, tenía y tiene el deber ineludible de firmar, presentar y someter a la Corte de Distrito de San Juan la ameritada solicitud de vuestros peticionarios interesando la correspondiente autorización para que dicha Corte permitiera entablar la petición de *quo warranto* mencionada, ya que dicha petición, así como los documentos que la acompañaban, estaban, como están, redactados y presentados en la forma legal debida.

"6.—El demandado no tiene facultad discrecional alguna para negarse, como se ha negado, a firmar y someter a la Corte de Distrito de San Juan la mencionada solicitud de *quo warranto* alegada en el párrafo o apartado 3 de esta petición de *mandamus*.

"7.—El demandado Benjamín J. Horton, al negarse a tramitar y darle curso a la petición de *quo warranto* aludida, ha ocasionado a vuestros peticionarios daños y perjuicios en la suma de $11,000.00 que se descomponen así: a Roberto H. Todd, $5,000.00; y a cada uno de los peticionarios restantes, $1,000.00.

"8.—Los peticionarios carecen de todo otro recurso adecuado, rápido y eficaz, en el curso ordinario de la ley, que no sea éste de *mandamus* para obtener el remedio que más adelante se solicita."

Ordenó la corte que compareciera el demandado el 26 de diciembre de 1933, a mostrar causa, si alguna tuviese, para que no se expidiera el auto solicitado.

Oyó la corte en efecto a ambas partes en el día señalado. Las razones que expuso el Procurador General para explicar su actitud fueron que a su juicio la ley que trataban de impugnar los peticionarios era constitucional y que tratándose como se trataba de una cuestión de interés público, su discreción para autorizar o no el auto de *quo warranto* era absoluta.

El 7 de febrero de 1934 la corte negó la expedición del auto. Apelaron los peticionarios. En abril 9 siguiente radicaron la transcripción. Solicitaron nueve prórrogas de

treinta días cada una para presentar su alegato. Venció la última en febrero 8, 1935, sin que el alegato se archivara y la corte fijó en marzo 21 la audiencia del 8 de abril para que expusieran las razones que tuviesen para que no se desestimara su apelación por abandono. En dicho día las partes estipularon que los apelantes tuvieran hasta el once para presentar su alegato y la corte aprobó la estipulación. No se presentó el alegato y otra vez se citó a los apelantes para mostrar causa para no desestimar por abandono el recurso. En el día señalado, junio 17, 1935, el apelado se unió a los apelantes para pedir que no se desestimara el recurso por haber finalmente archivado dichos apelantes su alegato el día anterior. La corte accedió y el caso permaneció en el calendario, celebrándose su vista después de varias suspensiones el 14 de enero de 1937.

El alegato de los apelantes sólo contiene siete páginas en maquinilla. Señala dos errores cometidos a su juicio por la corte sentenciadora al declarar que la discreción del Procurador General era absoluta y al decidir que los apelantes carecían de derechos individuales para instar el *quo warranto*.

Argumentando su primer señalamiento de error invocan los apelantes la sección 2 de la ley de *quo warranto* de 1902, citan las decisiones de esta Corte Suprema en *Pueblo v. Oliveras,* 33 D.P.R. 743; *Pueblo v. López,* 29 D.P.R. 810; *Cupril v. Parra,* 33 D.P.R. 757; *Barrera et al. v. Corte,* 10 D.P.R. 190, y *Ex rel. Pérez v. Manescáu,* 33 D.P.R. 739, 742, y las de *People v. Healy,* 231 Ill. 629 y *People v. Crowe,* 327 Ill. 106, de la Corte Suprema de Illinois.

La ley invocada, que es en verdad la aplicable, en lo pertinente dice: ''Cuando alguna persona usurpare o ilegalmente ejerciere o desempeñare funciones de algún cargo público. . . . el Fiscal General o cualquier fiscal de la respectiva corte de distrito, ya obrando por su propia iniciativa, ya a instancia de otra persona, podrá presentar a la corte de distrito que tenga jurisdicción en el asunto, una solicitud de que

se abra una información de la naturaleza del *'quo warranto'* a nombre de El Pueblo de Puerto Rico. . . .'' Sec. 779 de los Estatutos Revisados de Puerto Rico de 1902, p. 305: Art. 641 del Código de Enjuiciamiento Civil, ed. 1933, p. 264.

Y las decisiones de esta corte que se citan resuelven ''que los funcionarios municipales son empleados o funcionarios públicos y contra ellos cabe ejercitar procedimientos de *quo warranto''*: *Barrera et al.* v. *Corte,* supra; que ''cuando se trata de si un miembro del concejo de administración elegido por la asamblea municipal debe cesar o no por estar incapacitado para desempeñar dicho cargo, el procedimiento adecuado es el *quo warranto''*: *Pueblo* v. *López,* supra; que ''cuando un funcionario público municipal ha cometido o permitido alguna acción que de acuerdo con las disposiciones de la ley envuelva la pérdida de su cargo, procede el *quo warranto''*: *Ex rel. Pérez* v. *Manescáu,* supra; que ''el Attorney General de Puerto Rico tiene capacidad para demandar en procedimiento de *quo warranto* la destitución de un alcalde que usurpe el cargo'': *Pueblo* v. *Oliveras,* supra, y que ''un funcionario no puede sostener una demanda en equidad para impedir su separación y el nombramiento de su sucesor. Si su sucesor ha sido nombrado, su remedio es el *quo warranto''*: *Cupril* v. *Parra,* supra.

Estamos conformes con los apelantes en que de acuerdo con esa ley y esas decisiones su caso cae dentro del procedimiento de *quo warranto,* pero no es ésa la cuestión envuelta en el *mandamus.* Lo que aquí debe estudiarse y resolverse es si habiéndose negado el Procurador General a autorizar el *quo warranto,* puede y debe ordenársele que lo autorice.

Es a ese respecto que los apelantes citan los casos de *People* v. *Healy,* supra, y *People* v. *Crowe,* supra, ambos de Illinois, Estado en el cual el precepto legal que autoriza el *quo warranto* en relación con cargos públicos es igual al de Puerto Rico.

En el primero de dichos casos se decidió:

"Un procurador del estado no tiene discreción arbitraria e ilimitada para presentar o negarse a presentar una información de la naturaleza de un *quo warranto* a solicitud de una persona que tenga un derecho personal protegido por ese procedimiento; y si una persona que tuviere un agravio personal o privado, para el cual el procedimiento fuese el único remedio, presenta una solicitud en forma al procurador, con prueba de los hechos necesarios para establecer su derecho, el procurador debe solicitar permiso para presentar la información, y, si se negase a ello, puede ser obligado por medio de *mandamus*." 83 N. E. 453.

Y en el segundo:

"Cuando un individuo que tiene un derecho privado exigible a tenor de las disposiciones de la ley de *quo warranto*, presenta una petición para radicar una información de la naturaleza del *quo warranto* al Procurador del estado para su firma, es el deber de éste, si la petición está en debida forma y el *affidavit* de méritos que la acompaña es prima facie suficiente, firmar la petición y presentarla a la corte, y puede compelérsele a ello mediante *mandamus*." 158 N. E. 451.

Al actuar la corte sentenciadora tuvo en cuenta la doctrina que enuncian dichos casos y negó el *mandamus* porque estimó que el interés público envuelto era predominante. Dijo, con razón, a nuestro juicio:

"Procede entonces que determinemos si la petición de *quo warranto* en este caso sometida al Procurador General, está inspirada en un derecho individual o particular de los demandantes o si por el contrario comprende una cuestión de interés público.

"No se trata aquí del caso corriente de *quo warranto* en que un individuo alega que otro le ha privado de y ocupa ilegalmente un cargo existente al tiempo de presentarse la petición. Se solicita que los peticionarios sean repuestos en cargos que dejaron de existir hace tres años, para cuya reposición habría que declarar previamente anticonstitucional la ley creadora de los cargos ocupados por los actuales incumbentes. Para que los peticionarios pudiesen ser repuestos en los cargos a que alegan tener derecho, será necesario, como antes hemos indicado, declarar anticonstitucional y por consiguiente nula *ab initio,* la ley núm. 99 de 1931 (pág. 627), por la que se creó la corporación pública denominada 'Capital de Puerto

Rico.' Tal declaración llevaría consigo la nulidad de todas las actuaciones del Gobierno Municipal de la Capital de la Isla durante los tres últimos años, toda vez que los actuales incumbentes no podrían ser considerados ni siquiera como funcionarios *de facto*, pues para que exista el funcionario *de facto*, es indispensable que exista un cargo (*office*) *de jure*. En otras palabras, para que pueda existir el funcionario *de facto* es indispensable que la ley creando el cargo sea constitucional. Véase 22 R. C L. 590; 1 Bouvier's Law Dictionary (3rd. Ed.) 762; Dillon Municipal Corporation, sec. 276, y último párrafo de la nota que se halla en 21 L. R. A. 141.

"Bastaría considerar los graves trastornos que al público ocasionaría declarar anticonstitucional la Ley núm. 99 de 1931, para llegar a la irresistible conclusión de que la cuestión levantada por los demandantes es de un interés público de tal magnitud que hace que la discreción del Procurador General para autorizar o no la presentación del *quo warranto* sea absoluta o arbitraria, y no proceda el auto de *mandamus*, a pesar de los derechos individuales que puedan tener los peticionarios. Pero a mayor abundamiento y por creerlo muy pertinente al caso de autos, tomemos de la Corte Suprema de Iowa lo siguiente:

" 'Pero en cuestiones de interés público en que el pueblo se ha organizado de conformidad con las disposiciones de la ley en cuerpos municipales corrientes y año tras año ha recaudado contribuciones, hecho mejoras y ejercido sus franquicias corrientes, sus derechos son propiamente considerados como que dependen tanto de la aquiescencia como de la regularidad de su origen y no puede permitirse que una investigación *ex post facto* destruya su existencia corporativa. Irrespectivamente de cuáles sean los derechos de los individuos con anterioridad a tal aquiescencia general, el *status* corporativo de la comunidad no puede por más tiempo estar sujeto a impugnación. El caso cita el de *Rumsey* v. *People*, 19 N. Y. 41, y el de *Lanning* v. *Carpenter*, 20 N. Y. 447. El Sr. Cooley, en su obra sobre limitaciones constitucionales (pág. 312, cuarta ed.) dice: "En aquellos procedimientos en que surge colateralmente la cuestión de si existe o no una corporación; las cortes no permitirán que su naturaleza corporativa sea impugnada, si aparece que ella ha estado actuando de conformidad con la ley y ha sido reconocida por el estado como tal.... Y entendemos que la regla no sería distinta si la Constitución misma prescribiera la forma de hacer la incorporación. Aun en ese caso, prueba de que la corporación actuaba como tal, por acción legislativa, sería suficiente prueba del derecho, excepto contra el estado, y las personas particulares no podrían

entrar a discutir ninguna cuestión de regularidad. Y el estado mismo podría justamente ser excluído, bajo el principio de *estoppel*, de plantear tal objeción, cuando ha habido una aquiescencia y reconocimiento por largo tiempo.'' Éste, es cierto, es un procedimiento directo interpuesto por el estado. Y si bien el lenguaje usado se aplica en parte a procedimientos colaterales, parece también incluir acciones interpuestas directamente por el estado.' '' *State ex rel, West* v. *Des Moines,* 31 L. R. A. 186, 192.

Véase el caso de *Santiago* v. *Feuille, Fiscal General,* 10 D.P.R. 432, 438, resuelto por esta Corte Suprema desde el año 1906.

Como sabemos, la sentencia de la corte de distrito se dictó en febrero de 1934. Tres años más han transcurrido. Los trastornos que pudiera ocasionar la expedición del auto serían hoy aun mayores, y la dilación se debe a los propios apelantes.

Quizá sea conveniente agregar que aunque en su alegato no discuten los apelantes los méritos del *quo warranto,* hemos leído la documentación presentada al Procurador General y a la corte de distrito para basar la petición y no nos sentimos impresionados en el sentido de que resulte claro que la ley creadora del Gobierno de la Capital sea anticonstitucional.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.